IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TRELLICE A. SIMMONS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CASE NO. CV03-HGD-2414-S |
| ) | |
| WINN-DIXIE, INC., ) | |
| ) | |
| Defendant ) | |

**MEMORANDUM OPINION**

The above-entitled civil action is before the court on the motion for summary judgment filed by defendant, Winn-Dixie, Inc. (Doc. #11). This matter is before the undersigned based on the consent of the parties pursuant to Rule 73, F.R.Civ.P., and 28 U.S.C. § 636(c). Plaintiff, Trellice A. Simmons, an African-American female, alleges that she was terminated by Winn-Dixie in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981.

In her complaint, Simmons alleges that she commenced work for defendant in November 2000 as a general merchandise stocker in defendant's Hoover, Alabama, store. (Doc. #1, Complaint, at ¶ 5). She further alleges that she was terminated on January 4, 2002. The reason given for her termination by store manager Steve Nolan was insubordination. Nolan is Caucasian. (*Id.* at ¶ 6). In her complaint, Simmons denies having been insubordinate. She states that Nolan alleges that he paged her to come to the front of the

store and that she failed to do so. She asserts that she was assisting customers and, according to company policy, could not leave them. (*Id.* at ¶ 7).

Simmons further claims in the Complaint that Nolan alleged that she used abusive language, which she denied. (*Id.* at ¶ 8). However, she alleges that, even if she did engage in such conduct, she was treated more harshly than white, similarly-situated employees. (*Id.* at ¶ 9). According to Simmons, Tiffany Shay Lawley became belligerent and insubordinate to Nolan on an occasion previous to the one for which Simmons was fired. She alleges that Lawley yelled curse words in front of customers and other workers, went into the parking lot and threw food at the cars. Simmons also asserts that, on Nolan's instruction, the police were called. (*Id.* at ¶ 10). Lawley was not terminated for this conduct. (*Id.* at ¶ 11). According to Simmons, she was terminated because of her race while white employees were not disciplined and/or terminated for the same sort of conduct. (*Id.* at ¶ 12).

The issues raised by defendant's motion for summary judgment have been briefed by the parties, and the court has received evidentiary submissions from each party. Therefore, this matter is now ready for disposition.

## STANDARD OF REVIEW

This matter is considered by the court pursuant to the provisions of Rule 56, Fed.R.Civ.P. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the non-movant is to be

believed and all justifiable inferences are to be drawn in her favor. *Id.* at 255, 106 S.Ct. at 2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970). It is, therefore, under this standard that the court must determine whether the plaintiff can meet her burden of coming forward with sufficient evidence as to each material element of her claim sufficient to permit a reasonable jury to find in her favor.

## FACTUAL BACKGROUND

It is undisputed that plaintiff began working for defendant as a general merchandise stocker in November 2000. While working as a stocker, plaintiff was approached by the store manager[1] and asked if she would be interested in the job of Dairy-Frozen Food Manager. Plaintiff was unsure if she wanted the job but was encouraged to apply by the store manager. She was promoted to this position in May 2001. (Simmons Depo. at 86-88). Plaintiff had no complaint about the manner in which she was selected for promotion and believed she was treated fairly. (*Id.* at 98).

In late December 2001, plaintiff was approached by Nolan and asked if she would be interested in being promoted to second assistant store manager. Again, Simmons was unsure if she was interested but, with his encouragement, she applied and was promoted to this position in February 2002. (*Id.* at 100, 108-09). The second assistant manager supervises

---

[1] At this time, Nolan was not yet manager of this store. This promotion was accomplished under the supervision of Nolan's predecessor. Simmons held the position of Dairy-Frozen Foods Manager at the time Nolan came to the store as manager from another Winn-Dixie store in Pensacola, Florida, where he had been assistant manager. (Nolan Depo. at 9).

the night shift at the store. (Nolan Depo. at 10). This is considered the third highest position in the store behind store manager and co-manager. (*Id.*). Plaintiff had no complaints regarding her promotion to this position and believed that she was treated fairly. (Simmons Depo. at 123). As second assistant store manager, plaintiff was responsible for the operation of the store on the night shift and supervised 6 to 14 employees. (Simmons Depo. at 110-13).

On December 21, 2002, plaintiff was paged by store manager Nolan. (*Id.* at 184). The front end of the store was busy, and Nolan needed to open a register at the customer service desk to assist customers. He could not do so, however, because plaintiff's till was still at that register. Nolan paged plaintiff twice. (*Id.* at 183-84; Defendant's Amended Answers to Interrogatories and Request for Production, Answer to Interrogatory 2). According to Simmons' deposition testimony, during the first page, she was with customers and could not respond. (Simmons Depo. at 184-85). During the second page, plaintiff was trying to finish her stocking duties and again did not respond. (*Id.* at 184, 186). Nolan came to the aisle where plaintiff was located and asked her if she had heard the pages. She responded that she had but that she was helping customers and trying to finish her stocking. (*Id.* at 185-87). Nolan asked her if she thought stocking was more important and plaintiff responded that she was busy. (*Id.* at 187-88). According to Simmons, Nolan became angry with her and told her to "get out," which she took to mean that she was to get off the clock and leave work. (*Id.* at 187). Plaintiff admits that she made a conscious decision not to answer the pages. (*Id.* at 188, 199).

A few minutes later, plaintiff went up to the front of the store and was told by Nolan that she was suspended for a week. (*Id.* at 189, 203, 211-12). Plaintiff, who admits she was angry, asked if she was suspended with pay. She testified that she may have asked him this in front of customers. (*Id.* at 203-04). Nolan told her he would talk to her later. She again asked if she was suspended with pay. This also "probably" occurred in front of customers. (*Id.* at 204-05). On the second occasion, plaintiff asked in a loud voice. (*Id.* at 205). Nolan again told her that he was with customers and that he would be with her in a minute. (*Id.* at 205).

According to plaintiff, she then went to the back where the time clock is located and, hearing that she was going to be suspended, reacted and said "oh, hell, no" twice. (*Id.* at 206). She states she was thinking about the pay she would lose when she made these remarks. (*Id.* at 207). Simmons does not deny that when she said this, customers could hear her. (*Id.* at 214). She also admits that her actions that day were inappropriate. (*Id.*). She also acknowledges that her conduct was a "minor" violation of Winn-Dixie's rules and policies. (*Id.* at 215). She also admits that saying "oh, hell, no" was abusive language and insubordinate. (*Id.* at 223, 319).

On or about January 4, 2003, Nolan advised Simmons that her services were no longer needed at Winn-Dixie. (*Id.* at 240-41). Nolan advised Simmons she could come in and talk to him, but she decided that there was no purpose in going since she had been terminated. (*Id.* at 241-42). Later, Simmons went to the store and had a conversation with another

6

employee, telling him she was happy about what had happened because it gave her an opportunity to get an attorney and take advantage of the situation and sue. (*Id.* at 243).

In her EEOC Charge of Discrimination, Simmons denied being insubordinate. (Simmons Depo. at Exh. 2). Plaintiff now admits that this claim and her denial in her Complaint, that she was insubordinate and used abusive language, are false. (*Id.* at 220, 223, 225-26, 319). She also admits that her claim, that company policy states that she could not leave customers to answer a page, is false. (*Id.* at 318). After her termination, Simmons was replaced by Celeste Adams, a black female. (Nolan Depo. at 49, 51).

Plaintiff references another Winn-Dixie employee, Shay Lawley, as a comparator. Lawley, a white female, was a pricing manager. Unlike the position of second assistant manager, the pricing manager does not supervise any employees. Duties include generating accurate shelf labels for merchandise and maintaining an accurate scan price file. (Nolan Declaration at ¶¶ 3-4).

In October 2002, Lawley came to Nolan and said that she was sick and needed to go home. Nolan wanted her to make some signs before she left. She told him that it was not her responsibility to do so. Nolan told her that she needed to do it before she went home. Lawley told Nolan that she was not going to do it and that she was going home. Nolan told her that if she left, he would suspend her. She replied that he could suspend her. As she left, she threw a cup of honey mustard at Nolan's truck. The police were called to document any damage to the vehicle, but there was none. (Nolan Depo. at 29-31, 45).

During Lawley's suspension, she came to the store to talk to Nolan because she had heard she was going to be terminated. Nolan told her that he did not know and that he had to talk to the district manager. (*Id.* at 34). Lawley then went and spoke to the district manager. The district manager called Nolan and said that Lawley had asked for a second chance. He asked whether they could work it out. Nolan asked the district manager to send Lawley to the store so that they could talk about the incident. (*Id.* at 53-54). When she spoke with Nolan on this occasion, she apologized for her conduct and for throwing the honey mustard at his car. She asked that she be given a second chance. She was returned to work as a cashier. This entailed no reduction in pay and was a move made at Lawley's request. (*Id.* at 36-40, 54-55; Nolan Declaration at ¶ 3).

## DISCUSSION

Generally, a claim of employment discrimination is examined under the test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff alleges that *McDonnell Douglas* has been overruled by *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). In *Desert Palace*, the Supreme Court held that, in order to obtain a mixed motive jury instruction under Title VII, 42 U.S.C. § 2000e-2(m), "a plaintiff need only present sufficient evidence for a reasonable jury to conclude by a preponderance of the evidence, that 'race, color, religion, sex, or national origin' was a motivating factor for any employment practice" and that a plaintiff need not present 'direct evidence' of discrimination to obtain the mixed-motive jury instruction. *Id.*

at 101, 123 S.Ct. at 2155. Because the standard for when an issue can go to the jury is the same as the summary judgment standard, *Liberty Lobby*, 477 U.S. at 251, 106 S.Ct. at 2513-14, some courts have concluded that *Desert Palace* alters the summary judgment analysis for every Title VII claim. *See, e.g., Dunbar v. Pepsi-Cola General Bottlers of Iowa, Inc.*, 285 F.Supp.2d 1180, 1196 (N.D.Iowa 2003). Other courts have gone further to hold that *Desert Palace* spells the end of the *McDonnell Douglas* burden-shifting paradigm altogether. *See, e.g., Dare v. Wal-Mart Stores, Inc.*, 267 F.Supp.2d 987, 990-91 (D.Minn. 2003).

Importantly, however, this is not a mixed-motive case. Furthermore, *Desert Palace* did not involve the consideration of a case at the summary judgment stage. The only issue before the Court in *Desert Palace* was "whether a plaintiff must present direct evidence of discrimination in order to obtain a mixed-motive instruction . . . ." 539 U.S. at 92, 123 S.Ct. at 2150. The Eleventh Circuit Court of Appeals has not adopted the interpretations of the impact of *Desert Palace* on the analysis of summary judgment in discrimination cases cited in the cases above. *See Cooper v. Southern Co.*, 390 F.3d 695, 725 n.17 (11th Cir. 2004). In addition, other district courts in this circuit have held that "[t]here is nothing in *Desert Palace* that undermines the continued usefulness of *McDonnell Douglas*." *Herawi v. State of Alabama Dep't of Forensic Sciences*, 311 F.Supp.2d 1335 (M.D.Ala. 2004); *see also Sanders v. City of Montgomery*, 319 F.Supp.2d 1296, 1314 (M.D.Ala. 2004). The Middle District of Alabama is not alone in reaching this conclusion. *See, e.g., Winter v. Bank of Am., N.A.*, 2003 WL 23200278, at *3 (N.D.Tex. Dec. 12, 2003) (declining to accept contention that after *Desert Palace*, the *McDonnell Douglas* paradigm no longer exists); *Gover v.*

9

*Speedway Super America, LLC*, 284 F.Supp.2d 858, 865 n.1 (S.D.Ohio 2003) (same). Based on its review of these cases, the undersigned find that *Desert Palace* did not alter or eliminate the *McDonnell Douglas* paradigm employed in deciding motions for summary judgment in cases based on circumstantial evidence. Thus, this court rejects plaintiff's contention that she is excused from meeting the burdens placed on her by the *McDonnell Douglas* paradigm. Therefore, this court will apply the *McDonnell Douglas* test in order to determine whether summary judgment is in order.[2]

There is no direct evidence of discrimination offered in this case. In order to establish a *prima facie* case of discrimination using circumstantial evidence under the *McDonnell Douglas* test, the plaintiff must establish (1) that she is a member of a protected class, (2) that she was disciplined or terminated, and (3) that the discipline imposed was harsher than that imposed on comparably situated white employees. *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989).[3]

There is no dispute that Simmons meets the first two requirements for establishing a *prima facie* case of discrimination. However, defendant asserts that she has failed to show that she was disciplined more harshly than a similarly situated employee.

---

[2] The framework for analysis of a § 1981 claim is the same as for a Title VII claim. *See Walters v. City of Atlanta*, 803 F.2d 1135, 1143 n.5 (11th Cir. 1986); *Whiting v. Jackson State Univ.*, 616 F.2d 116, 121 (5th Cir. 1980).

[3] If these elements are present, plaintiff has made out a *prima facie* case even if she was not replaced by someone outside the protected class. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984).

First, defendant notes that Simmons had supervisory authority over other employees while Lawley did not. Simmons agreed in her deposition testimony that a store manager, co-manager, assistant manager, or other manager who supervises other employees should be held to a higher standard of conduct than employees who do not have that type of responsibility. (Simmons Depo. at 268). She also testified that her position was a responsible position and that she had a responsibility to conduct herself in a professional manner and to set an example for other employees. (*Id.* at 267). Supervisory status of an employee can justify the imposition of more serious discipline than that imposed for similar conduct by non-supervisory employees. *Cf. United States v. Crosby*, 59 F.3d 1133, 1136, n.7 (11th Cir. 1995).

Furthermore, after her suspension, Lawley went to the district manager and then to the store manager, apologized for her conduct and requested a second chance. (Nolan Depo. at 34, 53-54]. Simmons did not go to the store to talk to Nolan although he told her she could come in and discuss the matter with him. (Simmons Depo. at 240). In addition, the misconduct displayed by plaintiff involved the use of abusive language delivered in a loud voice within earshot of customers as well as other store employees. While Lawley was guilty of insubordination and of throwing a cup of honey mustard on the store manager's truck, there is no evidence that she used loud, abusive language in front of store customers. Thus, Simmons and Lawley are not "similarly situated in all relevant aspects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). It is also clear that Nolan considered Lawley and Simmons to be differently situated. "If an employer applies a rule differently to people it

11

believes are differently situated, no discriminatory intent has been shown." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1186 (11th Cir. 1984). Therefore, Simmons has failed to establish a *prima facie* case of discrimination.

Even assuming that a *prima facie* case of discrimination exists, defendant has asserted legitimate, non-discriminatory reasons for treating Lawley and Simmons differently. Plaintiff has presented no evidence that these reasons are pretextual.[4] Therefore, defendant is entitled to summary judgment in its favor with respect to all claims asserted herein by plaintiff. A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 11th day of January, 2005.

                                                HARWELL G. DAVIS, III
                                                UNITED STATES MAGISTRATE JUDGE

---

[4] Under the burden-shifting framework established in *McDonnell Douglas* and subsequent cases, once the plaintiff has established a *prima facie* case of discrimination, the burden then shifts to the employer to rebut the presumption of discrimination by producing evidence that its action was taken for some legitimate, non-discriminatory reason. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Should the employer meet its burden of production, the presumption of discrimination is rebutted, and the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination. *See id.* at 255-56, 101 S.Ct. at 1095-96.